## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH BREELAND,                           )
     Plaintiff                              )
                                            )
vs.                                        )     **C.A.No. 16-95ERIE**
                                            )
CAPTAIN JONES, et al,                      )     **Magistrate Judge Baxter**
     Defendants.                            )


## MEMORANDUM OPINION[1]

### A.  Relevant Procedural History

Plaintiff, acting *pro se*, originally filed this case on April 28, 2016. Plaintiff alleges that Defendants failed to protect him from assault by another inmate. As Defendants to the original complaint, Plaintiff named Captain Jones, Nancy Giroux, Melinda Adams, Deputy Clark, Unit Manager Flinchbaugh, and Sgt. Delaney. ECF No. 3.

Plaintiff later filed a motion requesting that Defendants Jones, Giroux, Adams, Clark and Flinchbaugh be dismissed. ECF No. 48. Following a hearing on the matter, this Court granted Plaintiff's motion leaving Sgt. Delaney as the sole Defendant to this action. ECF No. 55. Thereafter, Defendant Delaney filed an answer in response to the complaint. ECF No. 64.

In March of 2017, Plaintiff filed a motion seeking leave to amend the complaint and Plaintiff's motion was granted. ECF No. 72; ECF No. 77. The operative complaint is the Amended Complaint. ECF No. 83. As Defendants to this action, Plaintiff named Jones and Garlick. However, at a telephonic hearing held May 11, 2017, Defendants agreed that Ceramuga was a proper party to the Amended Complaint. ECF No. 85. During that hearing, this Court

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction under 28 U.S.C. § 636, et seq. See ECF No. 5; ECF No. 40; ECF No. 162.

determined that "all allegations in the complaint are against both" Garlick and Ceramuga and "the amended complaint is deemed to include Defendant Ceramuga wherever Defendant Garlick is named." ECF No. 159, page 9. Thereafter, Ceramuga was added as a Defendant and Captain Jones was terminated. On June 5, 2017, the Office of the Attorney General entered an appearance on behalf of Ceramuga and Garlick. ECF No. 87.

In the Amended Complaint, Plaintiff alleges that on January 11, 2016, Inmate Gilbert was moved into Plaintiff's cell. ECF No. 83, ¶ 10. Gilbert informed Plaintiff that he was not supposed to be in general population because he "was pending a transfer to the gang-unit." Id. at ¶ 11. Plaintiff alleges that Gilbert threatened him with bodily harm and that when Plaintiff notified prison staff of the threat, prison staff took no action to protect Plaintiff. Id. Sometime during third shift while Plaintiff was asleep on the top bunk, he was attacked by Gilbert and suffered injuries. Id.

Each Defendant has filed an answer in response to the Amended Complaint. ECF No. 99 (Garlick); ECF No. 111 (Ceramuga).

On October 12, 2017, Plaintiff filed a motion for summary judgment, arguing that he is entitled to summary judgment against Defendant Ceramuga but does not mention Defendant Garlick in his motion/brief. ECF No. 120.[2]

---

[2] The Local Rules of the Western District of Pennsylvania require that a motion for summary judgment be accompanied by a proposed order, a brief in support of the motion for summary judgment, an appendix, and a concise statement of undisputed material facts. See L.R.Civ.P. 56. Plaintiff's motion for summary judgment does not comply with this Rule as he has not filed a motion with a proposed order or a concise statement of undisputed material facts. Although Plaintiff filed a Concise Statement several months after his motion for summary judgment, the Statement does not "cite to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the material fact" as required by the Local Rules. Id.

On November 22, 2017, Defendants filed a motion for summary judgment arguing that: 1) Defendant Garlick had no personal involvement in the alleged constitutional violation as he was not at the prison at the time of the assault; 2) Plaintiff has not demonstrated a failure to protect claim (against Ceramuga); and 3) the uncontradicted record and video refute claims of injury and render Plaintiff's allegation of attack incredible. ECF No. 135.

All parties have filed briefs in opposition to the pending dispositive motions. Accordingly, the dispositive motions are fully briefed and are ripe for disposition by this Court.

### B. Standards of Review

#### 1) *Pro se* Litigants

In reviewing a *pro se* plaintiff's complaint, the court must accept all factual allegations in the complaint as true and take them in the light most favorable to the *pro se* plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (internal citation omitted). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more

than broad, simple and conclusory statements are insufficient to state a claim under § 1983."

Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520-521 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a §1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (internal quotation omitted). See also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.

### 2) Motion for summary judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] party seeking summary judgment always bears the

4

initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323 <u>quoting</u> F.R.Civ.P. 56.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. <u>Celotex</u>, 477 U.S. at 330. <u>See also</u> <u>Andreoli v. Gates</u>, 482 F.3d 641, 647 (3d Cir. 2007); <u>UPMC Health System v. Metropolitan Life Ins. Co.</u>, 391 F.3d 497, 502 (3d Cir. 2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim. <u>Celotex</u>, 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. <u>Id</u>. at 325. "Instead, ... the burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>Id</u>. After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. <u>Id</u>. at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." <u>Id</u>. <u>See also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001); <u>Garcia v. Kimmell</u>, 2010 WL 2089639, at * 1 (3d Cir. 2010) <u>quoting</u> <u>Podobnik v. U.S. Postal Serv.</u>, 409 F.3d 584, 594 (3d Cir. 2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007) (internal quotation marks and alterations

omitted). <u>See</u> <u>also</u> <u>Doe v. Cnty. of Centre, Pa.</u>, 242 F.3d 437, 446 (3d Cir. 2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. <u>Anderson</u>., 477 U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. <u>Id</u>. at 249. The court may consider any evidence that would be admissible at trial in deciding the merits of a motion for summary judgment. <u>Horta v. Sullivan</u>, 4 F.3d 2, 8 (1st Cir. 1993).

### C. Plaintiff's Deposition Testimony

Plaintiff's Amended Complaint is vague as to the chronological order of events leading up to the assault. However, it is crucial at the outset to understand the timeline of events in order to properly analyze Plaintiff's claims. Accordingly, at this juncture, a review of Plaintiff's deposition testimony as to the chronological order of events is appropriate.

On January 11, 2016, Plaintiff was housed on J-Unit at SCI Albion. ECF No. 137-1, page 21. Plaintiff had had trouble with his previous cellmate because both of them were on cell

restriction. Id. The other inmate was moved and Inmate Gilbert, who was released from RHU or ATA, was moved into Plaintiff's cell. Id. at 22.

When Gilbert came into Plaintiff's cell, Gilbert "spoke to me and he was like I'm not supposed to be in population right now. … And he says I'm getting transferred to the gang unit. I'm not supposed to be in this jail in population at all. So at that time he turned around and he said also, I don't know what's going on with you. I said what do you mean? He said those guards are telling me that you are a homosexual and maybe I don't want to live in here because I'm a – an active Blood member." Id.

A Certified Peer Specialist came to Plaintiff's cell to speak with him (while Gilbert was out of the cell) and Plaintiff "explained everything to him." The CPS worker then went to talk to somebody about Plaintiff's complaints and returned to tell Plaintiff that Gilbert was not supposed to be out of RHU. Id. at 22-23. No further action was taken by the CPS worker or prison staff.

After Plaintiff and Gilbert were locked in for the night, Gilbert told Plaintiff that he (Gilbert) could not stay in the cell and that one of them "gots to go." Id. at 23. Gilbert said "I can't live in here with you." Id. at 37. Gilbert told Plaintiff that Gilbert would "find a way to get out of this cell. And if I got to do something to you and that's my only option to get out of the cell, I'm going to do that." Id. at 23. See also id. at page 37.

When Gilbert made this threat, Plaintiff pushed the emergency button in the cell. Id. Through the intercom, Plaintiff told prison staff about Gilbert's threat and Plaintiff was told "we don't move this late" and to "deal with it." Id. at 24. See also id. at page 37 ("I said my cellmate is threatening harm to me."); page 71 ("I told them that my cellie is making threats of harm to me. And basically I said my cellie is making threats of harm towards me and that I need to be moved."). Plaintiff asked with whom he was speaking and the reply was "the sergeant." Id. at 37.

Sometime later during third shift[3], Plaintiff went to bed and was awoken when Gilbert pulled him off the top bunk and assaulted him. Id. Plaintiff did not hit the call button during the attack. Id. at 38.

In the morning, prison staff came to the cell to extract Gilbert and stated that Gilbert was not supposed to be out of RHU. Id. at 25.

In his deposition testimony, Plaintiff explained that the focus of this failure to protect claim lies with the person who answered the emergency call button during the second shift. Id. at 68-69.[4]

### D.  Defendants' motion for summary judgment

#### 1)  Lack of Personal Involvement of Defendant Garlick

---

[3] Shortly after the third shift began, Plaintiff pushed the call button but nobody answered. Id. at 24.

[4]    Plaintiff: Honestly, like I said, I didn't even look at the third shift. I wasn't focused on that, because I was focused on the case at hand. I wasn't trying to see who else I could sue. That's not my objective. My objective is not to see how much money I can get or who I can sue, or how many I can sue. I'm not trying to make enemies. I'm just trying to correct the wrong that was done to me.

Attorney Senich: … When you testified you hit the button once in second shift and once in third shift, third shift they didn't answer you. … So why didn't you look at third shift…?

Plaintiff: … How can I blame third shift, for an incident that should have been taken care of on second shift? Third shift – … nobody knows if second shift passed it onto them. So I'm not going to point the finger at third shift, because if they didn't pass it onto them, I'm sitting there blaming them for something that don't even involve them. The incident – even though the attack might of occurred on third shift, which it did, the incident arising to the attacks should have been handled on second shift … when [the threat] occurred. Then … there wouldn't be no attack on third shift.

Id. at 69.

The Commonwealth argues that summary judgment should be granted in favor of Defendant Garlick because the evidence demonstrates that Garlick was not personally involved in any alleged constitutional violation. This Court agrees.

To establish a § 1983 claim, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct.21, 2013) citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 358 Fed.App'x 297, 300 (3d Cir. 2009); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." Chinchello, 805 F.2d at 133; Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990) cert. denied, 501 U.S. 1218 (1991). Section 1983 liability cannot be predicated solely on the theory of *respondeat superior.* Rizzo v. Goode, 423 U.S. 362 (1976). See also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line

officer's actions); <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-95 (3d Cir. 1997) (holding that § 1983 plaintiff is required to show that supervisor personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).[5]

Here, Plaintiff acknowledges that the attack happened sometime during third shift and that his failure-to-protect claim revolves around the second shift sergeant's refusal to follow-up on Plaintiff's emergency call about Gilbert's threats of physical violence. Defendants have provided evidence in support of their position that Defendant Garlick was not personally involved in the alleged constitutional violation. The shift logs reflect that Garlick worked the morning shift from 6:00 am to 2:00 pm. ECF No. 137-2, page 2. Moreover, the master population log shows that Inmate Gilbert entered SCI Albion at 2:37 pm [ECF No. 137-2, page 17], after the end of Defendant Garlick's shift.

Plaintiff has not produced any evidence to contradict Defendants' evidence. Indeed, at his own deposition, Plaintiff acknowledged that Garlick should not be a party to this case. ECF No. 137-1, pages 70-71.

Summary judgment will be granted in favor of Defendant Garlick.

---

[5] In the context of a defendant who is alleged to have performed in a supervisory role, courts have identified two general instances in which either the conduct of that supervisor-defendant or the policies/procedures of that supervisor-defendant may amount to personal involvement and thereby warrant a finding of individual, supervisory liability for a constitutional tort: First, supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004) <u>citing</u> <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995). Second, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." <u>Id</u>. quoting <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 725 (3d Cir. 1989). Plaintiff does not allege that Garlick acted in a supervisory capacity over Ceramuga.

### 2) Deliberate indifference to substantial risk of harm

Next, Defendants argue that Ceramuga is entitled to summary judgment as Plaintiff has not produced evidence of deliberate indifference to Plaintiff's safety.

The Eighth Amendment imposes "a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners." <u>Hamilton v. Leavy</u>, 117 F.3d 742, 746 (3d Cir. 1997). <u>See</u> <u>also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (prison officials "must take reasonable measures to guarantee the safety of the inmates."). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." <u>Farmer</u>, 511 U.S. at 834. "Still not 'every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety.' " <u>Bistrian v. Levi</u>, 696 F.3d 352, 367 (3d Cir. 2012) <u>quoting</u> <u>Farmer</u>, 511 U.S. at 834. "Mere negligent conduct that leads to serious injury of a prisoner by a prisoner does not expose a prison official to civil rights liability." <u>Proctor v. Grafffus</u>, 2018 WL 1334989, at *3 (M.D. Pa. Mar. 15, 2018) <u>citing</u> <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48 (1986).

To establish a failure to protect claim under the Eighth Amendment, a plaintiff must show that:

> 1. he was incarcerated under conditions posing a substantial risk of harm;
>
> 2. the official was deliberately indifferent to that substantial risk to his health and safety; and,
>
> 3. the official's deliberate indifference caused him harm.

<u>Id.</u> Deliberate indifference may be proven by showing that "the official knows of and disregards an excessive risk to inmate health or safety." <u>Farmer</u>, 511 U.S. at 837. Not only must a prison

official be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but the official "must also draw the inference." Id.

Here, the record reflects that Inmate Gilbert was transferred into SCI Albion from SCI Houtzdale on January 11, 2016, at approximately 2:37 pm. ECF No. 137-2, pages 16-20. Inmate Gilbert was pending further transfer to SCI Greene for placement in the STGMU (Security Threat Group Management Unit). The Department of Corrections has admitted that Gilbert was only celled in general population with Plaintiff due to a "clerical oversight." ECF No. 137-2, Declaration of Earl Jones, Corrections Officer IV, pages 39-40.

Plaintiff has produced evidence that Inmate Gilbert specifically threatened him with physical harm and that Gilbert should have been housed in Restricted Housing due to his status as a Security Threat inmate. Although Defendants refute Plaintiff's interpretation of what a Security Threat inmate means [id.], they do not dispute that Gilbert should not have been housed in general population. Id.

Whether or not there was a substantial risk of harm to Plaintiff from Gilbert (based on either his erroneous placement in general population despite his status as a STGMU inmate or his alleged verbal threats to Plaintiff), there is a disputed issue of material fact as to whether Defendant Ceramuga knew of and disregarded a risk to Plaintiff's safety. Plaintiff testified at this deposition that he used his emergency call button and told the Sergeant on duty that Gilbert threatened him with physical harm. ECF No. 137-1 (Plaintiff's Deposition), pages 23-24, 37, 71. See also ECF No. 120-1 (Plaintiff's Declaration), page 1; ECF No. 120-3, (Declaration of Inmate Timothy Balchick), page 1. In his Declaration, Defendant Ceramuga swears that he did not answer any intercom communication from Plaintiff on January 11, 2016, and that he was not

aware of any issue between Plaintiff and Inmate Gilbert on that date. ECF No. 137-2, page 12. This dispute precludes the grant of summary judgment.

### 3) No injury

Finally, Defendants move to summary judgment arguing that the record and video evidence refute claims of injury and render Plaintiff's allegation of attack incredible. This Court disagrees with Defendants' characterization of the evidence submitted in support of the motion for summary judgment.

In the Amended Complaint, Plaintiff alleges that he suffered a split lip and a bone protruding from his right shoulder. ECF No. 83, ¶ 17.

In support of their motion for summary judgment, Defendants cite a video taken on January 12, 2016, at 1:05 pm and the lack of entries in Plaintiff's medical records. Defendants claim that the video contradicts Plaintiff's allegation that he sustained any injuries from the alleged assault. While the video does show Plaintiff raising his arms more than once, the quality of both the video and audio recording is low. While it is evident that the officers are asking Plaintiff questions, but most of the questions and some of the answers questions cannot be heard on the recording. At one point, Plaintiff shows his mouth to the officers, but not to the camera. ECF No. 137, Exhibit 11. Although Plaintiff seems to be moving freely, the video is inconclusive as to whether Plaintiff sustained any injuries from an attack the night before.

Defendants also cite Plaintiff's medical records, specifically the lack of entries between December 24, 2016, and February 23, 2016, as evidence to support the motion for summary judgment. ECF No. 137-1, pages 95-97. Defendants argue that the lack of entries means that Plaintiff did not suffer any injury. In opposition, Plaintiff swears he was examined and given

ointment for his lip and was prescribed pain pills and an x-ray for his shoulder. ECF No. 120-3, Breeland Declaration, page 3. Plaintiff's Declaration is also supported by the Declaration of Timothy Balchick who saw Plaintiff the morning after the attack and witnessed Plaintiff with a cut lip and a shoulder with "a bulge, like the bone popped." ECF No. 120-3, Balchick Declaration, page 4. Additionally, Plaintiff's deposition testimony indicates that he received medical treatment for his lip and his shoulder. ECF No. 137-1, pages 25-26.

Again, there is a disputed issue of material fact which precludes the award of summary judgment. Plaintiff has provided evidence of his injury, while Defendants have provided evidence suggesting that there was no attack or injury. Summary judgment will be denied.


**E. Plaintiff's motion for summary judgment**

Plaintiff's motion for summary judgment will be denied on much the same bases as Defendants' motion for summary judgment. Specifically, there are disputed issues of material facts as to whether Defendant was deliberately indifferent to Plaintiff's safety, as explained herein.


An appropriate Order follows.


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge


Dated: July 19, 2018